***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The following documents were entered into evidence during the hearing before the Deputy Commissioner:
 a. A copy of the executed and approved Compromise Settlement Agreement entered into on October 26, 2005 and signed by plaintiff on November 23, 2005, marked as defendant's exhibit 1. *Page 2 
 b. A copy of the order approving the Compromise Settlement Agreement, signed by Deputy Commissioner Phil Holmes and filed December 12, 2005, marked as defendant's exhibit 2.
 c. A copy of the cancelled check plaintiff received from the proceeds of the approved Compromise Settlement Agreement, marked as defendant's exhibit 3.
 d. A copy of the "Terms and Conditions for Beneficiary-Administered Medicare Set-Aside Account" in this matter, signed by plaintiff on November 23, 2005, marked as defendant's exhibit 4.
 e. A copy of a letter to plaintiff from attorney for defendants dated November 21, 2005, marked as plaintiff's exhibit 1.
 * * * * * * * * * * * ISSUE PRESENTED
Whether the approved Compromise Settlement Agreement should be set aside?
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about June 11, 2002, plaintiff suffered a compensable injury by accident arising out of her employment with defendant-employer when she was injured while attempting to enter a vehicle that was being operated by a co-employee. As a result of this accident, plaintiff suffered injuries to her right arm, legs, and low back. The claim was admitted using a *Page 3 
Form 60. The Form 60 was forwarded to the North Carolina Industrial Commission on or about August 6, 2003.
2. Following her injury by accident on June 11, 2002, plaintiff sought medical treatment from several medical care providers including, but not limited to, Dr. Richard D. Ramos at Greensboro Orthopaedic Center. On January 7, 2003, Dr. Ramos indicated that plaintiff had reached maximum medical improvement, and Dr. Ramos assigned a one percent (1%) permanent partial impairment rating to plaintiff's lumbar spine. Dr. Ramos also recommended that plaintiff undergo a Functional Capacity Evaluation, the results of which indicated that plaintiff was capable of returning to work at an automobile rental agency. This was plaintiff's occupation when she was injured on June 11, 2002. The Functional Capacity Evaluation also indicated that plaintiff was capable of performing work in the sedentary to light physical demand level.
3. Plaintiff retained the services of an attorney, Raymond Marshall, to represent her in the workers' compensation claim arising out of the June 11, 2002 accident. Attorney Marshall represented plaintiff at a hearing before Deputy Commissioner George Glenn that was held on April 29, 2004 and at the subsequent deposition of Dr. Ramos on April 19, 2005.
4. Following the hearing before the Deputy Commissioner and the deposition of Dr. Ramos, the parties, through their respective counsel, began settlement negotiations and reached an agreement to resolve plaintiff's workers' compensation claim arising out of her injury by accident on June 11, 2002.
5. A Compromise Settlement Agreement was prepared, signed by or on behalf of the parties, and submitted to the North Carolina Industrial Commission for review. The Compromise Settlement Agreement entered into by the parties called for plaintiff to receive the sum *Page 4 
of $75,000.00. From this $75,000.00 settlement, $15,022.00 was to be placed in a Medicare Set-Aside account to be self-administered by plaintiff.
6. The executed Compromise Settlement Agreement was submitted to the North Carolina Industrial Commission and reviewed by Deputy Commissioner Phil Holmes. On December 12, 2005, Deputy Commissioner Phil Holmes filed an Order Approving the Compromise Settlement Agreement entered into by the parties.
7. Plaintiff received a settlement check from defendant-carrier paying her $56,250.00, after deduction of attorney's fees, pursuant to the terms of the Compromise Settlement Agreement. Plaintiff testified that she received this check from Attorney Marshall's office on December 16, 2005 and that she cashed the check on December 17, 2005.
8. At the hearing before Deputy Commission Gillen, plaintiff testified that settlement negotiations related to the resolution of her workers' compensation claim had been handled by Attorney Marshall and that she had not had any contact with any representatives of defendants during the settlement negotiation process. Plaintiff also testified that the only person with whom she spoke about the terms of the Compromise Settlement Agreement was her attorney, Raymond Marshall.
9. The Commission finds that there is no evidence of fraud, misrepresentation, undue influence on the part of defendants or mutual mistake that would have led plaintiff to sign the Compromise Settlement Agreement.
10. Attorney Marshall no longer represents plaintiff and the evidence reveals that plaintiff has filed complaints against Attorney Marshall in various forums.
 * * * * * * * * * * * *Page 5 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for a party to set aside a Compromise Settlement Agreement, the moving party has the burden of proving that there has been error due to fraud, misrepresentation, undue influence, or mutual mistake. A settlement agreement may be overturned only in cases where there is evidence that there has been fraud, misrepresentation, undue influence, or mutual mistake. N.C. Gen. Stat. § 97-17(a); Glenn v.McDonald's, 109 N.C. App. 45, 425 S.E.2d 727 (1993).
2. In the present case, plaintiff has failed to show fraud, misrepresentation, undue influence, or mutual mistake in connection to the Compromise Settlement Agreement entered into by the parties. N.C. Gen. Stat. § 97-17(a); Glenn v. McDonald's, 109 N.C. App. 45,425 S.E.2d 727 (1993).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim to set aside the Compromise Settlement Agreement, must be, and hereby is, denied.
2. Each side shall bear its own costs. *Page 6 S/__________________________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/__________________________________ BUCK LATTIMORE COMMISSIONER
 S/__________________________________ CHRISTOPHER SCOTT COMMISSIONER